JOHN I. DEWS VS. YOUNG S. PICKARD.

*Certiorari.*

A payment to a person who has no power to receive, becomes valid, by a subsequent ratification by the creditor.

But where the creditor does not ratify the act of an individual, receiving money for him without authority, but merely assents to receive the liability of a third person, for the payment of the debt due by his debtor, the latter will not be discharged, unless it be *expressly* agreed to run the risk of the solvency of the person who comes in aid of the debtor, and to discharge the latter, or unless the creditor has thereby received payment of his debt, or has debarred himself from recovering by some *laches.*

*Thus,* where M., without any authority from the creditor D. for his own convenience, entered into an arrangement with the debtor P. (his partner,) by which M. assumed the payment of the money due to D., but there was no agreement in relation to this settlement, between P. the debtor, and D. the creditor, and the only evidence of assent shewn on his part, was, a charge made by him against M. of the amount of the due bill of P. in an account exhibited for the purpose of submitting all matters between them *for arbitration, held,* that these facts did not constitute a legal payment of the debt from P to D.

Where neither debtor nor creditor has directed the application of the payment made, the Court is vested with the discretion to apply it, according to the justice of the case.

**By ROBERT M. CHARLTON, Judge.**

THIS case is brought up by Certiorari, from the Court of Common Pleas and of Oyer and Terminer, for the City of Savannah. The following statement of facts is taken from the written opinion and decision of his Honor Judge *Henry,* before whom the cause was tried, in the Court below:—"This was an action of assumpsit, brought by the plaintiff against the defendant, to recover the sum of $90, upon the following due bill:—'$90—Due *John I. Dews,* ninety dollars, borrowed money.—*January* 2, 1830. Y. S. PICKARD.'"

" To this action the plea of the general issue was filed, and under it the defendant sets up the defence, that he has paid this due bill. The plaintiff rested his case upon the production of the due bill in

[Dews vs. Pickard.]

his possession. The defendant then, in support of his defence, called *Richard R. Cuyler*, Esq. who being sworn, testified, that a certain paper writing, headed No. 1, was left with him by *George Millen*, Esq: that a difference having arisen between the plaintiff and the said *George Millen*, in relation to their money transactions, ·they agreed to refer the same to the arbitration of friends: that said paper was left with witness for that purpose: that a portion of said account is in the hand writing of the plaintiff, and a portion in the hand writing of *Millen*.

"The paper referred to, being then introduced, and read in evidence, it was proved that the following charges, (amongst others,) were made against *Millen*, in the hand writing of plaintiff, viz:—

"2d Jan. 1830, *Y. S. Pickard*, to *John I. Dews* due bill, $ 90 00
"19th Jan. 1831,     do.     do.     do.     300 00
"12th March, 1831,     do.     do.     do.     360 00

This paper is headed, in the hand writing of *Millen*, 'Register of debts due August 1, 1834, by *George Millen* to *John I. Dews.*'

" *George Millen* was then called by defendant, and sworn. The due bill upon which the action was brought being handed to him, he testified, that he had a distinct recollection of the same, and for what it was given: that it was given by Mr. *Pickard* to the plaintiff, for money borrowed of him for witness' use, and which he received from *Pickard*, and for which *Pickard* gave the due bill in question : that at the time, witness and plaintiff were jointly interested in the proceeds of the Jail, &c. and witness and defendant in the concerns of a livery stable, in Savannah: that upon a settlement between the defendant and witness, in relation to the concerns of the livery stable, the payment of its debts fell to lot of witness: that upon this settlement, witness assumed the payment of the due bill in question, and believed that plaintiff was apprised of such settlement: that on one occasion, witness made plaintiff a payment of $100, generally, and on account, and had requested plaintiff, on several occasions, to get together his papers, that they

[Dews vs. Pickard.]

might have a settlement, but was put off by plaintiff, from time to time, on the ground that it was inconvenient, &c.: that upon an agreement between witness and plaintiff to arbitrate their differences, plaintiff, in his account rendered for that purpose, charged witness with the amount of *Pickard's* due bill, (on which the suit was brought,) and other notes : that upon the presentation of an account by witness, to plaintiff, for hack hire due by Dr. *Footman*, the Jail Physician, amounting to $40, the plaintiff stated to witness, that if witness insisted on that account, he, plaintiff, would charge witness interest on his notes : that no settlement of accounts had yet been made between plaintiff and witness, nor any balance struck, either by them individually, or by arbitration, and that their money affairs are now in suit and litigation.

The testimony of *George Millen* was objected to by the plaintiff's counsel, on the ground of interest, but the Court considering his interest to be equally balanced, according to his testimony, admitted it for what it was worth, allowing the objection to go to the credibility of the witness. It was then, upon the facts, which have been thus stated, that the Court was called upon to sustain the defence set up by the defendant, that this due bill had been paid by him," &c.

The Court below having decided, that the facts disclosed did not show a legal payment of this note, rendered judgment for the plaintiff, to which judgment the defendant's counsel excepted, insisting that the sett'ement made between defendant and *Millen*, in relation to this due bill, and the subsequent ratification and confirmation of that settlement, by the plaintiff, in charging *Millen* with the amount of this due bill, in the account rendered, and other alleged acts of confirmation, did constitute a legal payment to plaintiff of this note ; and moreover, that the sum of $100, paid " generally and on account," by *Millen*, being more than sufficient to extinguish this due bill, and not having been shown to have

PART II.—J. 3.

been appropriated by plaintiff to any other debt due by *Millen,* ought to have been applied by the Court to the extinguishment and payment of this due bill.

In the argument before me, it was strongly urged, by the counsel for the defendant, that although it is true that one individual cannot bind another without authority, yet, that a payment to a person who has no quality or power to receive, becomes valid by a subsequent ratification and approbation by the creditor, and that in this case, the subsequent acts and declarations of plaintiff, did make valid the previous payment to *Millen,* by defendant, of the note in question.

There can be no doubt that the rule of law is correctly stated by the defendant's counsel. The ratification of an act is equivalent to a prior authority to do it. In the language of *Best,* Ch. J. "the subsequent sanction of a contract, made by an *agent,* is more satisfactory than any authority given before hand. Where the authority is given before hand, the party must trust to his agent, but if it be given subsequently to the contract, the party knows that all has been done according to his wishes." (*Maclean* vs. *Dunn,* 4 Bingham 727. S. C. 1 *Moore* and *Payne,* 761.) There is no difficulty in the rule of law, and if any embarrassment arises, it must be upon the application of it to the facts of this case.

When it is said, that the subsequent ratification by the creditor, of the payment to a person who had no power to receive the money, makes the act valid, the rule must generally be taken to refer to the relationship of principal and agent. If one assumes to act in my name, and to receive for me a sum of money, and I subsequently assent thereto, I am taken to have admitted, or rather I have estopped myself from denying his authority to bind me. The moment the act is ratified by me, a privity of contract is established between us: the money that he received for me, and in my name, becomes, by my assent, my money, and may be recovered by me

[Dews vs. Pickard.]

from my self-constituted agent. Was this the case here? Did *Millen* in this settlement and alleged payment assume to act in behalf of plaintiff? Did plaintiff, by his subsequent assent and supposed ratification, confirm the act of *Millen* as his agent, or did he after due notice of all the facts, connected with the settlement, expressly assent and acquiesce in both the payment to *Millen*, and the mode of it? If none of these questions can be answered in the affirmative it must be evident, that neither the alleged payment to *Millen*, nor the subsequent ratification by plaintiff, can preclude him from recovering the amount of this due bill from defendant.

There is no evidence that any previous authority had been given by plaintiff to *Millen* to collect this debt, nor did the latter assume to act as plaintiff's agent in its (alleged) collection. By an agreement between plaintiff and *Millen*, the former of whom was Jailor, and the latter Sheriff of the county of Chatham, the profits arising between the two offices were to be divided between them; and *Millen* and defendant were co-partners in a livery stable. A settlement took place between defendant and *Millen* in relation to the concerns of the livery stable, and upon this settlement, it was agreed *between defendant and Millen*, that the latter should assume the payment of this due bill. I repeat, that *Millen* neither acted, nor assumed to act as the agent of plaintiff in this matter. He assumed the payment of this debt in consequence of the contract entered into between his co-partner, (the defendant,) and himself, but their agreement did not constitute any privity of contract between plaintiff and *Millen*. It was a principle of the civil law that a contract has no effect, except with regard to the things which are the object of the agreement, and to the contracting parties. *Pothier* in his treatise on the law of obligations, (1st vol. p. 45,) in reference to this principle, says, "the obligation which arises from agreements, and the rights which result from them, being formed by the consent and concurrence of intention of the parties, they cannot oblige or give right to a third person, whose in-

tention did not concur in forming the agreement. The 25th law code de *pact.* furnishes an instance. I agree with my co-heir that he shall take upon himself the whole of a certain debt due from the succession; this agreement shall not hinder the creditor from demanding the debt of me with respect to the part for which I am heir, for the agreement can have *no effect* in relation to the creditor who was no party to it. *Debitorum pactionibus creditorum petitio, nec tolli, nec minui potest.* It is no contradiction to this principle, that a partner may bind his associates; a factor his principal; a husband his wife, for these persons are considered as having themselves contracted by the ministry of the associate, the agent, or the husband."

I am not aware of any principle of our law that conflicts with the rule thus laid down. There are instances in which it has been held, that upon a promise in fact made to A, (where the contract is not under seal,) to pay money, or deliver goods to C, the latter might sue in his own name for the breach; but this case cannot be brought within the principle, without extending its operation unnecessarily. The contract entered in'o between defendant and *Millen* was made to bind *them*, and did not in its terms seek to bind, nor could it bind the plaintiff. If the latter had instituted an action against *Millen* for money had and received to his use, might not *Millen* have replied, I have received no money to your use; I have assumed the payment of a debt, due you by another, and I may have made myself liable to that other, for the non performance of that contract; but you have no cause of complaint against me; I did not assume to act as your agent in this settlement; it was made by me for my benefit and convenience, not for yours: you have paid no consideration, suffered no loss, given up no claim against your debtor, and there is no privity between us. It seems to me, that under the circumstances of this case, *Millen* might legally have thus replied to the plaintiff, if the latter had commenced any action against him.

But it is said, that *Millen* assented to become the debtor of the plaintiff, for the amount of this due bill, and that this assent having been communicated to plaintiff, and acceded to by him, that thereby a privity of contract was established between them, and that plaintiff might therefore have maintained an action against *Millen* for this amount. Admitting that he might, will that aid the defendant? Is there any proof that plaintiff assented to receive *Millen* as his debtor, *in the place of defendant*, and to discharge the defendant from all liability on the note? So far as I can ascertain from the evidence, there was no such agreement. The fact that an individual agrees to receive the obligation or liability of a third person, for the payment of a debt due from his debtor, will not discharge the latter, unless it be *expressly* agreed to run the risk of the solvency of the individual who comes in aid of the original debtor, and to discharge such debtor; or unless the creditor has thereby received payment of his debt, or has debarred himself from recovering, by some *laches* on his part, which *laches*, under special circumstances, may sometimes operate to preclude him from further suit. There is no such agreement proved here; in truth there is no agreement in relation to this settlement, proved in any manner, as *between plaintiff* and *defendant:* it is not even shewn, that defendant knew of the charge, made by plaintiff to *Millen*, of this due bill, and even if he had known of it, in the absence of any agreement to discharge him by the plaintiff, and to receive *Millen* absolutely in his place, as debtor, and with the fact disclosed, that in making the settlement with defendant, *Millen* acted for himself, and did not assume to act for plaintiff, I must declare, that the subsequent assent of the plaintiff, signified by charging *Millen* in the account exhibited against him, *for the purpose of arbitration*, was not the ratification by plaintiff as principal, of the settlement made by *Millen* with defendant, nor the recognition and confirmation of any act of *Millen's*, as his agent, but was merely an assent by a creditor, of a willingness to receive from a third person, the

sum due to him from his debtor, in pursuance of a contract entered into between such debtor and a third person, and to discharge the original debtor, *upon the payment* by such third person, of the debt. If the money had been paid to *Millen*, or, perhaps, if a debt due by *Millen* to defendant, had been cancelled by the latter, upon the condition that *Millen* would discharge a debt due from defendant to plaintiff, and plaintiff having received due notice of all the facts, had adopted this act, and expressly assented, both to the payment, and to the mode of payment, it might be argued with great force, that so far as defendant was concerned, the debt was discharged; but that case is a very different one from this, where *Millen*, for *his* benefit and convenience, and without any actual or pretended authority from plaintiff, entered into this agreement with defendant, to become the debtor of plaintiff, which agreement has never received any other assent on the part of plaintiff, (so far as appears from the statement of facts submitted to me,) save that evinced by charging Millen with the debt, in an account *made for the purpose of submitting all matters between them for arbitration*, and where there never has been any agreement, either express or implied, between plaintiff and defendant, to receive Millen as the debtor, in discharge absolutely, paid or unpaid, of the original debt due by defendant. In the absence of such agreement; with the fact of the possession of the note having been retained by the plaintiff, I must agree with the Court below, in affirming, that the settlement made between defendant and Millen, and the subsequent charge made by plaintiff, of the amount of this note, against Millen, did not constitute a legal payment of the debt, nor operate to discharge the defendant from the same, paid or unpaid.

I find it stated in the 4th exception taken by defendant, that the evidence established, that when plaintiff was requested by Millen to give up said due bill, he did not refuse to do so, but stated to Millen, that he could not conveniently find the same. The evidence taken by the Judge, does not substantiate this exception, but only

shows that Millen had requested plaintiff, on several occasions, to get together his papers, that they might have a settlement, but was put off from time to time, on the ground that it was not convenient, &c. Even the evidence, as stated in the exception, shows, more to my mind, an attempt by plaintiff, to evade the demand of Millen, that this due bill should be given up, than an assent to it, since he did not promise that he would give it up when found. If the due bill had been given up, or there had been any express promise, on the part of plaintiff, to give it up, founded on this settlement, it would go very far to evince an assent to its terms, and to the substitution of Millen as the debtor, in the place of the defendant. But there is no such evidence.

In reference to the argument, which has been pressed upon me, that plaintiff declared to Millen, on the occasion of the latter presenting an account due to the livery stable by the Jail Physician, that if that account was insisted on, he, plaintiff, would charge Millen "interest on *his* notes," I would ask, is there any proof to authorise the belief that he thus designated the due bill given by *defendant*, or that he did not refer to the many other transactions and notes that had passed between plaintiff and defendant?

It is urged, however, that plaintiff has actually received the amount of this due bill, and that no matter from what source, if it has been paid, the right of action is gone. The legal position cannot be controverted. But what is the evidence produced to substantiate the actual payment of this specific note to plaintiff himself. It is founded entirely upon the testimony of Millen, who declares that upon one occasion, *he* made a payment to plaintiff of $100, "generally and on account." The statement of facts furnished by the Court below, does not disclose the time when this general payment was made, whether before or after the settlement between defendant and Millen, by which Millen assumed the payment of this due bill. If it was made *before* the assumption of this debt by Millen, it ought not to be applied to the payment of a debt

[Dews vs. Pickard.]

that so far as Millen was concerned, had no existence at the time, and it would be properly applied to such debts as were then existing, and due by Millen in his individual capacity; and if such payment did not take place until after such settlement and assumption of this debt by Millen, it seems to me, that it would be an improper exercise of the discretion vested in the Court, where the application of the payment has not been made by either debtor or creditor, to apply such payment to this specific debt, when the evidence discloses, that the plaintiff still holds two notes made by defendant, upon the trial of the suits brought upon which, such payment may be deducted, if the defendant is entitled to the benefit of the payment; and when it is also made known, that all the accounts between plaintiff and Millen are in suit and litigation, and where such payment may also be allowed, if the facts then proved will authorise such application. No injustice can be done to any party by the refusal to apply such payment to this specific debt.

*It is ordered*, that the case be remanded to the Court of Common Pleas, and of Oyer and Terminer, for the City of Savannah, and that it be certified to the Hon. *Charles S. Henry*, the Judge thereof, that it is the opinion and decision of this Court, that there was no error committed by that tribunal, in awarding judgment against the defendant, and that such further proceedings be had on such judgment, as to law and justice may appertain.

Judgment affirmed.

WILLIAM LAW, for the plaintiff—JOHN MILLEN, for the defendant.